UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ERICKA LATRICE MCCOY,               )
                                    )
        *Plaintiff*,                )
                                    )
v.                                  )        No. 1:21-cv-090-SKL
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        *Defendant*.                )

## MEMORANDUM AND ORDER

Plaintiff Ericka McCoy ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Doc. 20 & Doc. 26] and filed supporting briefs [Doc. 21 & Doc. 27]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 20] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 26] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 11 ("Tr.")], Plaintiff filed her applications for DIB and SSI on December 18, 2017, alleging disability beginning May 27, 2016. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The first hearing was held August 28, 2019, in Chattanooga, Tennessee, but that hearing was continued so Plaintiff could obtain representation. The second hearing was held January 22, 2020, in Chattanooga, Tennessee. Plaintiff was

represented by counsel at the second hearing.  On April 13, 2020, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed the instant action.

## II.  FACTUAL BACKGROUND

### A.  Education and Employment Background

Plaintiff was born January 22, 1974, making her 42 years old on the alleged onset date, which is considered a "younger person."  20 C.F.R. §§ 404.1563(c); 416.963(c).  She has a limited education[1] and is able to communicate in English.  The ALJ noted Plaintiff has worked in the past as a caregiver, a janitor, and a housekeeping cleaner.  However, the ALJ noted it was "unclear whether these jobs were substantial gainful activity, were performed long enough for the claimant to achieve average performance, and were performed within the relevant period as required by SSR 82-62." (Tr. 23-24).

### B.  Medical Records

In her December 2017 Disability Report, Plaintiff alleged disability due to depression (Tr. 262).  While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C.  Hearing Testimony

At the hearing before the ALJ on January 22, 2020, Plaintiff and a vocational expert ("VE")

---

[1] Plaintiff's brief states that she has completed two years of college [Doc. 21 at Page ID # 1141].  This appears to be an error.  Plaintiff testified at the January 2020 hearing that she has only a tenth grade education (Tr. 39).

2

testified.  As noted, Plaintiff was represented by counsel at the hearing.  The Court has carefully reviewed the transcript of the hearing (Tr. 32-48).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

3

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B.     The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2023. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, May 27, 2016.

At step two, the ALJ found Plaintiff had the following severe impairments: (1) residuals of a lower extremity joint dysfunction, (2) obesity, and (3) degenerative disc disease of the lumbar spine. The ALJ also noted Plaintiff had been diagnosed with depression, but he found this condition did not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere (Tr. 18). The ALJ further found additional nonsevere impairments of hypertension, hyperlipidemia, and diabetes (Tr. 18).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "a reduce[d] range of light exertion in which she stands/walks not

more than 4 hours per eight-hour day, to include the full range of sedentary exertion as defined in 20 C.F.R. 404.1567(a) and 416.967(a)," with the following additional restrictions:

- She cannot climb ladders, ropes, or scaffolds.

- She can only occasionally climb ramps and stairs.

- She can only occasionally balance, stoop, kneel, crouch, and crawl.

- Secondary only to the adverse side effects of prescribed medications, she is limited to a non-hazardous work environment.

(Tr. 20).

At step four, as mentioned above, the ALJ found Plaintiff had previously worked as a caregiver, janitor, and a housekeeping cleaner, but that it was unclear whether this work constituted substantial gainful activity. The ALJ therefore declined to resolve the case at step four, even though the housekeeping cleaner occupation did fall within the parameters of Plaintiff's RFC (Tr. 24).

At step five, the ALJ found there were occupations available to a person with Plaintiff's RFC existing in substantial numbers in the national economy, including housekeeping/cleaner, small parts assembler, and hand packager at the light physical exertional level; and tableworker, assembler, and sealer at the sedentary physical exertional level (Tr. 24-25).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date of May 27, 2016, and the date of the decision, April 13, 2020 (Tr. 25).

## IV.    ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings. She lists the following issues:

5

1.  The ALJ's Step 2 determination is unsupported by substantial evidence where he failed to properly evaluate Plaintiff's depression.

2.  The ALJ's RFC determination is not supported by substantial evidence because he failed to properly evaluate Dr. Goewey's opinion.

[Doc. 21 at Page ID # 1140].

## A.      Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

6

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     The ALJ's Assessment of Plaintiff's Depression

Plaintiff argues the ALJ erred by finding her depression to be a nonsevere impairment and further because the decision "provides no explanation for not incorporating any other mental limitation into his RFC determination despite finding mild mental limitations in all domains of function." [Doc. 21 at Page ID # 1156-57].

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

7

§ 416.920(c).  The step two determination is "a de minimis hurdle," in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).  Further, as Plaintiff acknowledges, "'[t]he fact that some of [a claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant' where other impairments are found to be severe."  *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps."  *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Gray v. Comm'r of Sec. Sec.*, 365 F. App'x 60, 61 (6th Cir. 2010)).

In this case, the ALJ found Plaintiff had severe impairments, namely residuals of a lower extremity joint dysfunction, obesity, and degenerative disc disease of the lumbar spine (Tr. 18). Accordingly, to the extent the ALJ erred in finding that Plaintiff's depression was a nonsevere impairment, such error is harmless as long as the ALJ properly considered Plaintiff's depression at later steps.

Social Security Ruling ("SSR") 96-8p provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

8

SSR 96-8p, 1996 WL 374184, at *5 (SSA July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'").

The Sixth Circuit clarified the requirements of SSR 96-8p in *Emard*. In that case, the plaintiff argued the ALJ failed to consider his nonsevere impairments in assessing RFC, and that the ALJ failed to consider the effect of all his impairments in combination with one another. 953 F.3d at 851. In applying SSR 96-8p and the corresponding regulation, 20 C.F.R. § 416.945(e) ("Total Limiting Effects"), the Sixth Circuit rejected the plaintiff's arguments, stating:

> Although the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and "all symptoms" at this step in the process. This court in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir. 1987), concluded that an ALJ's statement that he had conducted "a thorough review of the medical evidence of record," along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination. *Id.* at 591-92. It explained that "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered," and "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* at 592. As in *Gooch*, the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination.
>
> Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe." District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g., Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc.*

9

*Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id*. at 287. **The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.**

*Emard*, 953 F.3d at 851-52 (emphasis added).

In this case, the ALJ specifically noted in his step two analysis that the RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis," and the ALJ begins his RFC assessment by noting that he "considered **all** symptoms" (Tr. 20 (emphasis added)). At the end of his RFC assessment, the ALJ stated that his "review of the record reveals no significant deficiency in the claimant's ability to perform the work-related activities" required by Plaintiff's RFC (Tr. 23). The ALJ also explained that he limited Plaintiff to a non-hazardous work environment, "secondary only to adverse side effects of prescribed medications." (Tr. 23).

In discussing the applicable law, the ALJ acknowledged that he "must consider all of the claimant's impairments, including impairments that are not severe," citing the applicable regulations and Social Security Ruling ("SSR") 96-8p (Tr. 17). At step two, the ALJ addressed the functional limitations imposed by Plaintiff's depression (*see* Tr. 18-19). Furthermore, contrary to Plaintiff's suggestion, the ALJ's findings of mild limitations in each of the four areas of mental functioning does not necessarily mean the ALJ was required to incorporate mental limitations into Plaintiff's RFC. *See, e.g., Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at * (E.D. Mich. July 24, 2017) (citing cases holding "mild limitations do not require

10

incorporation into an RFC assessment"), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

Accordingly, the Court's inquiry turns to the more substantive question of whether substantial evidence supports the ALJ's determination not to include mental limitations in Plaintiff's RFC.

In support of his determination that Plaintiff's depression was a nonsevere impairment, the ALJ found:

> The evidence establishes an additional ongoing diagnosis of depression, with prescribed psychotropic medications. Outpatient mental health records from the Helen Ross McNabb Center in April 2018 reflect that, despite a somewhat depressed mood, mental status examination demonstrated logical thought processes, normal behavior, and normal speech (Exhibit 13F/2). The subsequent mental health record reflects no decline, with mental status examination in August 2019 demonstrating a normal mood with normal affect, normal behavior and normal thought content (Exhibit 17F/6).

> Therefore, I find the claimant's medically determinable mental impairment of depression, considered singly and in combination, does not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.

> I have also considered the mental health opinions from State agency mental health consultants. At initial review in January 2018, consultants assessed the claimant's mental health impairment of depression as, non-severe (Exhibits 3A and 4A). Following reconsideration review in June 2018, consultants determined the claimant is restricted to simple tasks/instructions, with additional limitations to infrequent interaction with the general-public (Exhibits 5A and 6A). In review, however, the redetermination mental health opinion is not persuasive, as the mental health record fails to support such limitations in concentration and in social interaction. Indeed, the claimant has stated she remains capable of completing tasks, and has had no difficulty interacting with multiple treating and examining sources (Exhibit 8E/6). The initial non-severe opinion from State agency physicians is persuasive, as I find

11

it is consistent with and supported by the mental health evidence in
the claimant's case file.

(Tr. 18-19). When discussing the four general areas of mental functioning, the ALJ also relied on

Plaintiff's April 2018 Adult Function Report (Tr. 299-306), as well as the Helen Ross McNabb

records.

Plaintiff emphasizes that she "was diagnosed with severe depression since at least July 18,

2016." [Doc. 21 at Page ID # 1154]. She cites page 582 of the record, but the only information on

page 582 concerning Plaintiff's mental state is a statement: "Little interest or pleasure in doing

things: 0: not at all." (Tr. 582), which appears to indicate Plaintiff actually was **not** experiencing

this issue (*see* Tr. 785). Regardless, the record from the same day does not identify depression as

a "problem" (Tr. 583). The three problems listed are hypertension, nicotine dependence, and

elevated white blood cell count (Tr. 583).

Plaintiff goes on to identify a number of items in the record which she contends the ALJ

erred by not considering or discussing. Many of these, however, are records from the Helen Ross

McNabb Center, which the ALJ did reference as quoted above, and which were available to the

State agency psychological consultants who reviewed Plaintiff's file and determined Plaintiff had,

at most, mild mental limitations (Tr. 60-61). The fact that the ALJ did not specifically discuss

each entry noted by Plaintiff in her brief is of no moment, because the ALJ is "not required to

explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436,

445 (6th Cir. 2018). Further, "an ALJ's failure to cite specific evidence does not indicate that it

was not considered." *Simons v. Barnhart*, 114 App'x 727, 733 (6th Cir. 2004).

Plaintiff emphasizes that during a Comprehensive Pain Specialists ("CPS") appointment

in July 2017, she was instructed to call a crisis helpline after she informed the nurse she was

depressed and "has had thoughts of hurting herself by wrecking her car" (Tr. 665). She argues that because the ALJ did not specifically discuss this record or others relating to Plaintiff's allegedly suicidal thoughts, that it is "impossible for the Court[] to determine whether the ALJ" considered this evidence "or if he simply ignored this evidence altogether." [Doc. 21 at Page ID # 1155]. However, the ALJ does, in fact, cite to the CPS records in his RFC assessment (Tr. 21). Although he does not specifically discuss the CPS entries Plaintiff cites, the record nevertheless reflects the ALJ did review the CPS records, and the ALJ specifically mentions a December 2017 CPS entry reflecting that Plaintiff reported she was able to work, attend social outings, cook, and do her hobbies (Tr. 21, 635). The record reflects the State agency psychological consultant also reviewed the CPS records when he offered his opinion that Plaintiff's mental limitations were, at most, mild, and that her depression was nonsevere (Tr. 60-61). The ALJ also cited the Dodson Avenue Medicine medical records, which Plaintiff cites in her brief (Tr. 571, 22). It is therefore clear the ALJ considered the relevant records.

Plaintiff argues that throughout her treatment, she "had completed multiple PHQ-2 and PHQ-9 assessments that were all significant for depression." [Doc. 21 at Page ID # 1154 (citing Tr. 574, 785)]. Page 574 reflects that, in February 2017, Plaintiff told her providers that she felt "down, depressed or hopeless," and had "little interest or pleasure in doing things." However, by May 2019, the screening showed that Plaintiff had minimal or mild depression, and she indicated she was not feeling down, depressed, irritable or hopeless at all (Tr. 785). This improvement is also supported by Helen Ross McNabb records indicating that by April 2018, Plaintiff was not experiencing suicidal or homicidal ideation, she had not engaged in self-injurious behaviors, and her depression was better (Tr. 696). She had a score of "0" on a review for suicide risks (Tr. 696). The ALJ specifically discussed the Helen Ross McNabb records from April 2018 at step two (Tr.

13

18).  The ALJ further discussed that Plaintiff maintained a normal mood and affect, with normal thought content into August 2019.  Records from Elite Pain Consultants describe Plaintiff's depression as "mild" in November 2019, with no thoughts of hurting herself or others (Tr. 991). Finally, as early as November 2017, Plaintiff reported that she was not experiencing any visual or auditory hallucinations (Tr. 613).

The only specific mental functional limitations Plaintiff advocates are (1) limitation to simple tasks/instructions, and (2) infrequent interaction with the general public [Doc. 21 at Page ID # 1156].  She argues the ALJ improperly rejected these limitations, which were opined to by the State agency psychological consultant who reviewed Plaintiff's file on reconsideration:

> In support of this finding, the ALJ alleged Plaintiff herself claimed to remain capable of completing tasks and that she had not been observed to have difficulty interacting with multiple treating and examining sources.  T 19.  The ALJ cites to one functioning report that Plaintiff did not check the box next to completing tasks as an area that was affected due to her mental impairments, but does not reconcile this finding with the same evidence that Plaintiff had indicated her conditions affect memory, concentration, understanding, following instructions, and getting along with others that would all impact her ability to perform work on a sustained basis.  T 304.  Moreover, the ALJ points to an absence of evidence indicating any difficulty to interact with her providers, all the while ignoring ample evidence of Plaintiff's reports of wanting to hurt others, involving herself in altercations with her supervisors, and being observed by these providers as having a flat or depressed mood when receiving treatment.  T 617, 620, 623, 625, 626, 665, 698, 708.

[Doc. 21 at Page ID # 1156].

Many of the pages Plaintiff cites as part of this argument are part of the Helen Ross McNabb records and the CPS records, which are addressed above.  As noted, the record reflects the ALJ did consider these records and noted Plaintiff's mental health did not decline over time (Tr. 18).

14

Plaintiff cites to no authority supporting the proposition that it was improper for the ALJ to rely on Plaintiff's own admissions in her Adult Function Report. While it is true Plaintiff checked boxes on this form indicating her conditions affected her ability to concentrate, understand, get along with others, remember, and follow instructions, the checked boxes do not indicate any particular severity. Plaintiff indicated on the same Adult Function Form that she was able to talk and play cards with people, that she has never been fired because of issues with other people, and that she gets along "okay" with authority figures (Tr. 303-05). At that time, she was living with her two sons and cooking for them (Tr. 299). She shops online for clothes, shoes, and household cleaners, and manages her household finances (Tr. 302), which the ALJ noted demonstrates her ability "to understand the need, remember the appropriate steps, and apply information to complete such tasks." (Tr. 19). Even if there are some internal inconsistencies in the Adult Function Report, which the Court does not find, it was the ALJ's job to weigh the evidence.

In sum, the Court finds the ALJ adequately and accurately considered the evidence and explained the basis for his decision not to include any functional limitations in Plaintiff's mental RFC. In other words, he addressed Plaintiff's nonsevere impairments along with her severe impairments, and found that Plaintiff's mild mental limitations at step two did not affect her RFC. *See Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *12 (N.D. Ohio Oct. 30, 2017) ("[T]he ALJ did not find that the record demonstrated the need for specific work-based limitations related to concentration, persistence, or pace. Therefore, the ALJ was under no obligation to incorporate into either the RFC or the hypothetical question such limitations."). Plaintiff cites to some evidence that she contends supports her claim of disability, but an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The record in this case demonstrates the ALJ incorporated into the RFC the functional limitations he found to be credible and supported by the record. Accordingly, Plaintiff's motion will be denied to the extent she challenges the ALJ's assessment of her depression and mental RFC in general.

### C.     The ALJ's Consideration of Dr. Goewey's Opinions

Plaintiff also challenges the ALJ's assessment of her physical RFC, specifically, the ALJ's consideration of the opinions of the consultative examiner, Stephen K. Goewey, M.D. Regarding Dr. Goewey's opinions, the ALJ wrote:

> In May 2018, and at the request of the Social Security Administration, the claimant presented to Stephen K. Goewey, M.D., a general medical consultative examiner, who assessed decreased range of motion of the lumbar spine, cervical spine, shoulders, hips and knees. During this examination, Dr. Goewey statistically assessed the claimant at a height of 5'4" and with a body weight of 245 pounds (Exhibit 15F/2). In accordance with Social Security Ruling 19-2p, I have considered the effects of obesity in assessing the claimant's residual functioning capacity.

> In assessing physical functioning, Dr. Goewey opined the claimant can lift 20 pounds occasionally, sit between 3 to 4 hours during an 8-hour workday and stand and/or walk at least 3 hours during an 8-hour workday (Exhibit 15F/2-4). Longitudinal review of the record reflects the claimant underwent an initial examination with Dr. Goewey in May 2015, and after which he proffered physical limitations commensurate with the current consultative opinion (Exhibit 4F).

> Although I have considered the proffered opinions from Dr. Goewey, I find the claimant has a greater level of functional restriction in standing/walking, and in lifting/carrying. Specifically, and secondary to low back pain and bilateral knee pain, I find the claimant is limited to standing/walking no more than two (2) hours during an 8-hour workday. Given the claimant's history of ACDF and left shoulder arthroscopy, limitations to lifting/carrying no more than 10 pounds on an occasional basis, is reasonable. With regard to the proffered limitations in sitting, the record yields no evidence of adverse clinical findings that would preclude the claimant from

16

sitting 6 hours during an 8-hour workday. As such, the opinions from Dr. Goewey are only partially persuasive.

(Tr. 22).

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff filed her applications on December 18, 2017. Accordingly, as both parties acknowledge, the applicable regulations are 20 C.F.R. §§ 404.1520c and 416.920c.[2]

Subsection (a) of 20 C.F.R.404.1520c provides:

(a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

---

[2] For clarity's sake, the Court also notes that applications filed prior to March 27, 2017, were subject to the so-called "treating physician rule," which requires ALJs to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 406 (6th Cir. 2009). ALJs are no longer required to give special deference to treating physicians, as is reflected in the regulation cited above.

17

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(2).

In addition to supportability and consistency, the ALJ is required to consider the source's relationship with the claimant, including the length, frequency, purpose, and extent of the treating relationship, if any; the source's specialization, and other factors, such as the source's familiarity with other evidence in the record and whether the source understands the SSA's policies and evidentiary requirements. *Id.* § 1520c(c). The ALJ is required to explain how they considered supportability and consistency, but not the remaining factors. *Id.* § 1520c(b)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

Plaintiff contends the ALJ's findings regarding Dr. Goewey's opinions "were not supported by substantial evidence because he failed to properly articulate how he considered the opinions with specific reference to the supportability and consistency factors as required under the regulations." [Doc. 21 at Page ID # 1161]. Regarding the supportability factor, Plaintiff argues the ALJ "failed to assess whether Dr. Goewey's opinions were supported by his own examination notes," contending "Dr. Goewey's opinion concerning Plaintiff's limitation to sit for prolonged periods is wholly supported by his objective observations during both examinations." [*Id.* at Page ID # 1159-60].

18

Relevant to supportability, the ALJ observed that Dr. Goewey arrived at his opinion after examining Plaintiff and assessing "decreased range of motion of the lumbar spine, cervical spine, shoulders, hips and knees" as well as obesity (Tr. 22). The ALJ then specifically noted Dr. Goewey's exam findings concerning Plaintiff's low back and knees and her associated pain supported limitations in standing/walking (Tr. 22). Accordingly, when the ALJ rejected Dr. Goewey's opinion regarding sitting, the ALJ impliedly found these same findings (pain and decreased range of motion in low back and knees) did not provide adequate support for the sitting limitation Dr. Goewey assigned. Plaintiff does not contend this is error nor does she address why the decreased range of motion Dr. Goewey observed supports robust sitting limitations.

Elsewhere in the decision, the ALJ discussed findings and notations in Plaintiff's medical record that undermine the supportability of Dr. Goewey's opinion, and which reflect that the ALJ performed the requisite consistency analysis. For example, the ALJ noted the following findings from 2019 appointments at UT Erlanger Neurology and UT Erlanger Orthopedics:

> In examination, . . . Don Hakes, PA-C [from UT Erlanger Neurology] assessed no significant abnormalities, with full range of motion of the cervical spine. During focused examination, Mr. Hakes noted the claimant expressed "significant pain" in range of motion of the hips; however, during distracted examination, the claimant had good hip flexion, bilaterally, and expressed no pain with internal or external rotation (Exhibit 30F/22). Mr. Hakes assessed "excellent strength" of the bilateral lower extremities, with x-rays of the left hip reflecting no more than "mild" sclerosis of the acetabulum (Exhibit 30F/22). . . .
>
> Despite subjective complaints of continuing lumbar pain, the objective clinical record fails to support such complaints as alleged. Treatment records from UT Erlanger Orthopedics show x-rays of the lumbar spine reflected only "moderate" lumbar spondylosis at L4-5 and L5-S1, with subsequent lumbar MRI studies in June 2019 yielding no evidence of spinal, canal, or neural foraminal stenosis (Exhibits 21F/12 and 24F/14). Orthopedic records reflect a diagnosis of trochanteric bursitis, with prescribed epidural

19

injections. Post-injection examination of the left hip in July 2019 reflect[s] normal range of motion and normal strength (Exhibits 20F/3/8).

Although the claimant continued to report persistent lumbar pain, the clinical record fails to support such complaints as alleged. In August 2019, the claimant returned to UT Erlanger Neurology wherein physical examination reflected normal gait, normal station, intact sensation to light touch, and with muscle strength measured at 5/5 throughout all extremities. Despite some decrease in lumbar range of motion, straight leg raises were negative. Records from this visit reflect no recommendations for surgical intervention, with the claimant advised to continue pain management and encouraged to lose weight (Exhibit 30F/4).

(Tr. 21-22).

The ALJ also discussed August 2019 records from the Dodson Avenue Health Clinic, which reflected the provider's finding that, upon examination, Plaintiff had no abnormalities (Tr. 22, 828). The provider recommended Plaintiff exercise for "30-45 minutes most days of the week" (Tr. 830), with, as the ALJ put it, "no proffered limitations or restrictions." (Tr. 22). Plaintiff was instructed to return in three months (Tr. 830). Finally, the State agency physicians found, initially and on reconsideration, that Plaintiff could sit for up to six hours out of an eight-hour workday with normal breaks (*see, e.g.,* Tr. 63). The ALJ found their opinions partially persuasive, rejecting their opinions concerning Plaintiff's ability to stand and walk to Plaintiff's favor (Tr. 23).

The ALJ's decision demonstrates that he considered the factors of supportability and consistency in evaluating Dr. Goewey's opinions. Although the ALJ did not specifically use the terms "supportability" and "consistency," and even if this term omission constitutes error, the Court finds it is harmless at most. In this case, the ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of these factors and to determine that the ALJ's evaluation is supported by substantial evidence. *See Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021

20

WL 4059310, at *4 (S.D. Ohio Sept. 7, 2021) (ALJ's failure to use the terms "supportability" and "consistency" in analyzing medical opinion, "even if error, was harmless"). Contrary to Plaintiff's position, the decision reflects a "logical bridge between the evidence and the result." [Doc. 21 at Page ID # 1163 (quoting *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)].

Plaintiff also lists a number of notations and entries in her medical record which she claims are consistent with Dr. Goewey's opinion. The ALJ at least references many of these in his discussion of Plaintiff's treatment history, quoted above. It is not necessary to go through each of these records because even if they do tend to support Plaintiff's position and her overall disability claim, they do not change the fact that the ALJ's consideration of Dr. Goewey's opinion was proper and is supported by substantial evidence.

Two issues remain. First, Plaintiff argues the ALJ's decision lacks substantial support because the hypothetical the ALJ posed to the VE did not limit Plaintiff to three or four hours of sitting daily and did not include any mental limitations [Doc. 21 at Page ID # 1162]. As discussed above, the Court finds Plaintiff has failed to show harmful error with the ALJ's assessment of Plaintiff's depression-related mental limitations or with the ALJ's rejection of Dr. Goewey's opinion regarding Plaintiff's ability to sit. Because Plaintiff's argument concerning the hypothetical question depends on the success of these other arguments, it fails as well.

Second, Plaintiff argues the ALJ "created an inconsistency between his RFC and his assessment of Dr. Goewey's opinion." [Doc. 21 at Page ID # 1162]. Plaintiff is referring to the fact that, in assessing RFC, the ALJ found Plaintiff could stand/walk "not more than **4 hours** per eight-hour day" (Tr. 20 (emphasis added)). When discussing Dr. Goewey's opinions, the ALJ found "secondary to low back pain and bilateral knee pain, I find the claimant is limited to

21

standing/walking no more than **two (2) hours** during an 8-hour workday." (Tr. 22 (emphasis added)).  Plaintiff is correct that the ALJ does not reconcile this inconsistency.  Nevertheless, as the Commissioner points out, any error in this regard is harmless.  This is because the ALJ also noted Plaintiff's RFC included the full range of sedentary exertional work (with postural limitations) and the ALJ identified sedentary occupations available to Plaintiff including table worker, assembler, and sealer (Tr. 20, 25).  Sedentary work requires about two hours of standing/walking per eight-hour workday.  *See* SSR 83-10, 1983 WL 31251, at *5 (SSA Jan. 1, 1983); *see also* 20 C.F.R. § 404.1567(a).  Harmless error does not justify remand.  As this Court and the Sixth Circuit have repeatedly held, where "remand would be an idle and useless formality," courts are not required to "covert judicial review of agency action into a ping-pong game."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

V.    **CONCLUSION**

        For the foregoing reasons, it is **ORDERED** that:

        (1) Plaintiff's motion for summary judgment [Doc 20] is **DENIED**;

        (2) the Commissioner's motion for summary judgment [Doc. 26] is **GRANTED**; and

        (3) the Commissioner's decision denying benefits is **AFFIRMED**.

        SO ORDERED.

        ENTER:

                                s/ *Susan K. Lee*
                                SUSAN K. LEE
                                UNITED STATES MAGISTRATE JUDGE